# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____

UNITED STATES ex rel. RIVER : 
FRONT RECYCLING AND : 
AGGREGATE, LLC, : 
 : 
          Plaintiff, :    **Hon. Joseph H. Rodriguez**
 : 
          v. :    Civil Action No. 18-9141
 : 
KALLIDUS TECHNOLOGIES, : 
INC. and FIDELITY AND : 
DEPOSIT COMPANY OF : 
MARYLAND, : 
 :    **<u>Opinion</u>**
          Defendants. : 
_____ :

      This matter comes before the Court on a motion by Defendants Kallidus Technologies, Inc. (Kallidus) and Fidelity and Deposit Company of Maryland (Fidelity) to dismiss the present action or transfer it to the United States District Court for the District of Massachusetts, Boston Vicinage. Defendants' motion is based on a forum selection provision in the Standard Subcontract Agreement (hereinafter Subcontract) executed between Kallidus and Plaintiff River Front Recycling and Aggregate, LLC (River Front). The forum selection provision allows Kallidus to elect to arbitrate or judicially resolve all disputes related to the Subcontract, and places venue for all such disputes in Boston, Massachusetts.

Pursuant to the Subcontract, Kallidus argues this action must be dismissed for improper venue or, in the alternative, transferred to Boston. Kallidus claims the forum selection clause governs this dispute even though the suit was originally filed by River Front. Additionally, Kallidus argues the clause is valid because it was adequately supported by consideration and its terms are unambiguous.

River Front responds that the forum selection clause does not apply because this dispute is governed by a different provision of the Subcontract. Furthermore, River Front argues the forum-selection clause is ambiguous and invalid for lack of consideration. In the alternative, River Front argues the case must remain in this Court because of venue requirements within the state and federal law claims brought by River Front. Having considered the parties' submissions, the Court decided this motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated below, Defendants' motion to transfer venue is granted.

I. **Background**

River Front is a contractor in the civil construction and recycling business, with offices in Lumberton, NJ. [Dkt. No. 1, Ex. A, Complaint, ¶ 2]. Kallidus is a foreign corporation that performs general construction services, with offices in Lowell, Massachusetts. Id., ¶ 1. Kallidus obtained a

contract to build a maintenance shop for the federal government in Sea Girt, NJ, and hired River Front as a subcontractor for the project. Id., ¶ 5; Subcontract, at 1. Subsequently, Kallidus and River Front entered into the Subcontract, which contains the disputed forum selection provision. Complaint, ¶ 5. The provision reads:

> **6.4.** Notwithstanding the foregoing, and in consideration of $100 paid to the Subcontractor, the receipt whereof is acknowledged as part of the Subcontract Sum, at the sole option of the Contractor, any controversy, dispute or claim between the Contractor and the Subcontractor related in any way to this Agreement or the Project may be determined by a separate action in court or by a separate arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then pertaining, whichever the Contractor may elect in its sole discretion. *The parties expressly agree that the venue of any such court action or arbitration shall be Boston, Massachusetts.* Any award rendered by the arbitrator or arbitrators shall be final and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction.

Subcontract, ¶ 6.4 (emphasis added). The parties executed the agreement on or around April 12, 2017. Complaint, ¶ 5. As a construction contractor for the federal government, Kallidus is also subject to the Miller Act provisions requiring bonds be posted for federal construction projects. 40 U.S.C. § 3131. To fulfill these requirements, Kallidus arranged for Fidelity to issue a Payment Bond and a Performance Bond for the project. [Dkt. No. 7, Amen. Complaint, ¶ 7].

Kallidus made two payments, totaling $92,822.10, to River Front for work performed on the Subcontract, but failed to pay River Front the remaining balance of $206, 977.90. Complaint, ¶ 9-11. In April of 2018, River Front sued Kallidus in the Superior Court of New Jersey, Burlington County, claiming breach of contract, unjust enrichment, quantum meruit, book account, and claims under the New Jersey Prompt Payment Act. Kallidus removed the case to this Court and filed a Motion to Dismiss or Transfer Venue pursuant to the Subcontract forum selection clause. River Front filed an amended complaint with this Court, adding Fidelity as a defendant and raising claims under the Miller Act. Amen. Complaint, at 1-3. Defendants now move for dismissal or to transfer venue to the United States District Court for the District of Massachusetts, Boston Vicinage.

## II. **Standard of Review**

A. Transfer or Dismissal

A Court determining whether to dismiss or transfer a case for purposes of venue applies either 28 U.S.C. § 1404 or 28 U.S.C. § 1406. The Court of a district "in which is filed a case laying venue in the wrong division or district" applies § 1406 to dismiss the action or transfer it to a division or district in which it could have been brought. Only the application of § 1406—which applies if the original venue is improper—may

give rise to a dismissal under these circumstances. Jumara v. State Farm Ins., 55 F.3d 873, 878 (3d Cir. 1995). In contrast, § 1404 is used to transfer a civil action to "any other district or division where it might have been brought or to any district or division to which all parties have consented." Courts applying § 1404 have authority to transfer an action even if the original venue is proper. Jumara, 55 F.3d at 878.

B. Forum Selection Clauses

The ability to transfer civil actions regardless of whether venue is proper allows parties to contract to litigate in a particular forum by using forum selection clauses. Courts evaluating a transfer pursuant to a forum selection clause must give the clause "controlling weight in all but the most exceptional cases." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. Of Tex., 571 U.S. 49, 59-60 (2013) (quoting Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (KENNEDY, J., concurring)).

Courts evaluating a transfer pursuant to a forum selection clause consider three factors. First, a plaintiff opposing a forum selection clause bears the burden of proving that transfer to the contractual forum is unwarranted. Atl. Marine, 571 U.S. at 63. This burden rests with the plaintiff since the plaintiff, by contractually accepting a forum selection

provision, has effectively exercised its ability to select a venue before a dispute arises. Id.

Second, courts will not consider arguments about the private interests of the parties, since the pre-selection of the forum presumes that these interests weigh in favor of the contracted venue. Id. at 64. A court may consider public-interest factors that weigh against a transfer motion, but such factors will rarely defeat a motion to transfer. Id.

Third, a plaintiff subject to a forum selection clause who inappropriately files suit in a different forum is not entitled to the choice-of-law rules of the filing forum if the case is transferred under § 1404(a). Id. This policy prevents plaintiffs from gaming a forum selection provision by filing suit in an inappropriate forum in order to defeat state-law advantages built into a forum selection clause. Id. at 65.

C. Interpretation of Forum Selection Clauses

"The question of the scope of a forum selection clause is one of contract interpretation." In re McGraw-Hill Glob. Educ. Holdings LLC, 909 F.3d 48, 58 (3d Cir. 2018) (quoting John Wyeth & Brother Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1073 (3d Cir. 1997)). Questions of contract interpretation are substantive rather than procedural, so courts

interpreting forum selection clauses apply state law except for very limited circumstances. Collins ex rel. herself v. Mary Kay, Inc., 874 F.3d 176, 182 (3d Cir. 2017).[1] Because New Jersey has the most dominant and significant relationship to the parties and the issues in this case, New Jersey contract law governs this dispute. NL Indus. Inc. v. Commercial Union Ins. Co., 65 F.3d 314, 319 (3d Cir. 1995).

In New Jersey, discerning the intent of the parties is the primary concern of contract interpretation. Jacobs v. Great Pacific Century Corp, 104 N.J. 580, 581 (1986). Courts discern intent using any number of interpretive devices, including consideration of the particular contractual provision, overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct. Id. When evaluating intent, a court must consider the terms of the contract in the context in which it was written, and accord a rational meaning to the contract language. Id. at 586.The terms of a contract objectively manifest the intent of the parties;

---

[1] The Collins Court stated that federal common law applies to issues of contract interpretation only in "restricted areas," such as those in which there are uniquely federal interests at stake, or where Congress has delegated power to the federal courts to develop substantive law on a particular subject. Collins, at 182. Such federal interests include rules regarding the interaction of the judiciary and other members of the international community (Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398 (1964)) and contracts to which the United States is a party (Miree v. DeKalb County, Ga., 433 U.S. 25 (1977)), none of which at stake in this case.

therefore, with the exception of certain specialized or contextual contractual language, the terms in a contract are given their plain and ordinary meaning. Kaufman v. Provident Life and Cas. Ins. Co., 828 F. Supp. 275, 283 (D.N.J. 1992), aff'd, 993 F.2d 877 (3d. Cir. 1993).

If a written contract is ambiguous, however, a court will construe it more strongly against the party drafting the contract. Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 193 (App. Div. 2002). A contract is ambiguous if its terms are susceptible to two or more reasonable alternative interpretations. Id. at 191. When determining whether the language in a contract is ambiguous, courts look to the contract as a whole and must not torture the language of the contract in order to create an ambiguity. Id. Additionally, a party cannot obtain relief from a contract term that is unambiguous by simply arguing the term had a secret, unexpressed meaning contrary to its plain meaning. Id.

### III. **Analysis**

The Court begins by evaluating whether venue is proper in the District of New Jersey, an analysis over which a forum selection clause has no bearing. Atl. Marine, 571 U.S. at 56. Because a substantial part of the events or omissions giving rise to this lawsuit took place within the District of New Jersey, venue is proper in this Court. 26. U.S.C. § 1391(a)(2) &

(b)(2). Accordingly, the Court will not dismiss under § 1406, but it will consider transferring the action under § 1404(a).

River Front brought this action in the State of New Jersey instead of the Subcontract venue of Boston, Massachusetts. As the plaintiff, it bears the burden of defeating Kallidus' Motion to Transfer. River Front has advanced several arguments against transfer, which the Court will examine.

### A. The Forum Selection Clause Applies to River Front

River Front first argues that Section 6.4 of the Subcontract, which contains the forum selection clause, does not apply to this action. Instead, River Front asserts that Section 6.3 governs this action. Section 6.3 states: "Completion of the dispute resolution procedure in the [Subcontract] shall be a condition precedent to the right of the Subcontractor to commence or continue any legal action or other dispute resolution proceeding against the Subcontractor." Subcontract, ¶ 6.3. River Front argues Section 6.3 governs because this action was brought by River Front (as opposed to Kallidus), and because neither party argues the dispute resolution procedures in the Subcontract were not met. Section 6.3 does not contain a forum selection provision, so River Front concludes the forum selection clause does not apply to this case. The Court disagrees.

Section 6.4 of the Subcontract applies to "any controversy, dispute or claim between the Contractor and the Subcontractor." Section 6.1, which River Front admits applies to all disputes between Kallidus and River Front, uses almost identical language, referencing "any controversy or claim between the Contractor and the Subcontractor." Opp. to Motion to Dismiss, at 5. The plain language of both provisions states that each provision applies to *any* dispute between River Front and Kallidus relating to the Subcontract. As this is a dispute between River Front and Kallidus relating to the Subcontract, Section 6.4 applies to this action.

Furthermore, Section 6.4 applies "Notwithstanding the forgoing . . . at the sole option of Kallidus." The phrase "notwithstanding the foregoing" makes Section 6.4 controlling regardless of a preceding provision to the contrary, including Section 6.3.[2] Additionally, Section 6.4 has no specific requirement that a particular party *actually bring* the action for the provision to apply, unlike Section 6.3 of the Subcontract.[3] Section 6.4 gives

---

[2] The phrase "notwithstanding the foregoing" requires that a paragraph in which it appears "be given controlling significance over the preceding text." Henkels & McCoy, Inc. v. Adochio, 138 F.3d 491, 506 (3d Cir. 1998) (STAPLETON, J., dissenting); see also Simonson v. Z. Cranbury Assocs. P'ship, 149 N.J. 536 (1997) (holding a mortgagee could exercise a contract option releasing a portion of mortgaged property from a mortgage "notwithstanding the foregoing" provision in the contract generally requiring payment of a fixed sum of money per acre to release the mortgage).

[3] Section 6.3 of the Subcontract applies to "any legal action . . . [commenced or continued by River Front] against the Contractor." Section 6.4 contains no such specific designations regarding legal proceedings commenced or continued by Kallidus.

Kallidus, as the Contractor, the privilege to avail itself of the forum selection clause in any dispute between it and River Front relating to the Subcontract. Kallidus properly invoked the forum selection clause in spite of the fact that it did not bring the suit.

### B. Kallidus Gave the Required Consideration

River Front also argues the forum selection clause is void because Kallidus did not give the consideration the clause required. The clause required "consideration of $100 [to be] paid to the Subcontractor, the receipt whereof is acknowledged as part of the Subcontract Sum." Subcontract ¶ 6.4. The Subcontract Sum is defined as $400,000. Id. at 1. River Front claims that, because it did not receive the entire Subcontract Sum, it did not receive the $100 consideration required by the forum selection clause; therefore, the clause is void for lack of consideration.

The Subcontract forum selection provision states receipt of the $100 is acknowledged as "*part of* the Subcontract Sum." Subcontract, ¶ 6.4 (emphasis added). Section 11.1 of the Subcontract anticipates that the Subcontract Sum will be satisfied by periodic payments from Kallidus to River Front, not one lump sum of $400,000. Id., ¶ 11.1. The payments of $92,922.10 from Kallidus to River Front were paid toward the satisfaction of the $400,000 Subcontract with River Front, see Cert. of Douglas Cook, ¶

3-4, which makes them "part of" the entire Subcontract Sum of $400,000. The forum selection provision does not state that the $100 consideration is only deemed paid when the Subcontract Sum is entirely paid.

Alternatively, River Front argues the consideration was never paid because River Front never sent an invoice for the $100 paid by Kallidus. The Subcontract contains no requirement that the payment be separately invoiced or otherwise delineated from any other payment made in satisfaction of the Subcontract Sum in order to be valid. In fact, Section 6.8 of the Subcontract states that the Subcontract dispute resolution procedures are "deemed incorporated into any payment . . . issued by or for [River Front] regarding the Project." Subcontract, ¶ 6.8. These procedures, including the $100 consideration, were incorporated into the payments between Kallidus and River Front. The payments from Kallidus to River Front were part of the entire Subcontract Sum and exceeded $100, making them valid consideration with no further notice required between River Front and Kallidus.

### C. The New Jersey Prompt Payment Act Does Not Defeat Transfer

River Front further argues that the forum selection clause is invalid because of the venue requirement in the New Jersey Prompt Payment Act (NJPPA). In relevant part, the NJPPA states, "In any civil action brought to

collect payments pursuant to this section, the action shall be conducted inside of this State . . ." N.J.S.A. 2A:30A-2(f). River Front argues its NJPPA claims must be litigated within New Jersey, which precludes the Court from transferring the case to Boston.

The effect given to a contractual forum selection clause is determined by federal law, not state law. Jumara, 55 F.3d at 877; see also Tozer v. Charles A. Krause Milling Co, 189 F.2d 242, 245 (3d Cir, 1951) ("[State] law, of course, does not control in matters of federal procedure."). Because of the supremacy of federal law, River Front cannot overcome the forum selection clause simply by relying on a state-law venue provision. Instead, it must demonstrate why the forum selection clause cannot be upheld in accordance with the factors outlined by the Third Circuit in Coastal Steel Corp. v. Tilghman Weelabrator, Ltd., 709 F.2d 190 (3d Cir. 1983). The Coastal Steel court determined that forum selection clauses are presumptively valid and will be enforced unless a party objecting to a forum selection clause establishes (1) that it is the product of fraud or overreaching, (2) enforcement violates a strong public policy of the forum, or (3) under the circumstances of the case, transfer would result in litigation in a jurisdiction so inconvenient as to be unreasonable. Id. at 202. River Front has not demonstrated that this forum selection clause was a

product of fraud, or that, under the circumstances of this case, litigation in Boston would be so seriously inconvenient as to be unreasonable. New Jersey has a general policy of upholding the validity of forum selection clauses, see Cadapult Graphic Sys., Inc. v. Tektronix, Inc., 98 F. Supp. 2d 560, 568 (D.N.J. 2000), and River Front has not presented any countervailing concerns that overcome this policy. Therefore, River Front's invocation of the NJPPA is insufficient to overcome the forum selection clause.

### D. Divestiture of Federal Jurisdiction over Miller Act Claims

Finally, River Front claims that transfer will improperly divest the federal courts of jurisdiction over River Front's Miller Act claims. As a government subcontractor, River Front is subject to the Miller Act, which requires civil suits filed pursuant to its provisions to be brought "in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy." 40 U.S.C. § 3133(b)(3)(B). The Subcontract work was performed in the District of New Jersey, which makes this Court the proper venue for River Front's Miller Act claims.

River Front further argues that the forum selection clause does not allow transfer to federal courts in Boston; therefore, a transfer would divest

the federal courts of the ability to hear River Front's Miller Act claims. River Front bases its argument on its conclusion that the geographical distinction in the forum selection clause is ambiguous. River Front posits the clause can be interpreted two different ways: it refers to state and local courts in Boston, or it refers to state, local and federal courts in Boston. If a forum-selection clause is ambiguous, it must be construed more strongly against the drafting party, which in this case was Kallidus. <u>Intermetals Corp. v. Hanover Intern. Aktiengesellschaft Fur Industrieversicherungen</u>, 188 F. Supp. 2d 454, 460 (D.N.J. 2001). Under River Front's preferred interpretation, the forum selection clause only permits transfers to state and local courts in Boston, in which case River Front could not litigate its Miller Act claims if the case were transferred. Therefore, River Front argues the ambiguity must be resolved in its favor and that the case must remain in this Court.

The Supreme Court has labeled the Miller Act forum selection provision as "merely a venue requirement." <u>F.D. Rich, Co., Inc. v. U.S. for Use of Indus. Lumber Co., Inc.</u>, 417 U.S. 116, 125 (1974). Accordingly, several circuits have held this venue requirement can be waived by a valid forum selection clause. See <u>FGS Constructors, Inc. v. Carlow</u>, 64 F.3d 1230, 1233 (8th Cir. 1995) (holding applicable section of the Miller Act was a

venue provision enacted to benefit defendants and could be waived by valid forum selection clause); U.S. ex rel. Pittsburgh Tank and Tower, Inc. v. G&C Enter., Inc., 62 F.3d 35, 36 (1st Cir. 1995) (holding that the Miller Act requirement is "simply a venue statute" and that it is subject to waiver through a valid forum selection agreement).

Furthermore, the Third Circuit has provided guidance for interpreting geographic designations within forum selection clauses. In New Jersey v. Merrill Lynch & Co., Inc., the Court reviewed a forum selection provision in a contract placing exclusive jurisdiction "in the appropriate courts of the State [of] New Jersey." 640 F.3d 545, 546 (3d Cir. 2011). The defendants removed the case to federal court, but the district Court remanded the case back to New Jersey state court, concluding that the reference to courts "of a state" limited jurisdiction to state courts. Id. at 547. On appeal, the defendants argued that the provision allowed venue in both state and federal courts within New Jersey, but the Third Circuit disagreed. Id. at 548. In its decision, the Court adopted the interpretation principles used by the Fourth Circuit, holding the language "'of [a state]' connot[es] sovereignty, limiting jurisdiction . . . to the state courts of the named state." Id. at 549 (quoting FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC, 626 F.3d 752, 755 (4th Cir. 2010)). In contrast, the

phrase "in a state" expresses "the parties' intent as a matter of geography" and allows jurisdiction in both state and federal courts of the named state. FindWhere, 626 F.3d at 755. The Court concluded that the plain meaning of the word "of" in the forum-selection clause unambiguously referred to the courts of the State of New Jersey and excluded federal courts located within the state of New Jersey. Merrill Lynch, 640 F.3d at 548-50; see also Dixon v. TES Int'l Inc., 330 F.3d 396, 398 (5th Cir. 2003) (per curiam) ("Federal district courts may be *in* [a state], but they are not *of* [that state]").

The forum selection clause in the Subcontract states that "venue . . . shall be Boston, Massachusetts." It does not limit venue to the courts "of the City of Boston" or the courts "of the State of Massachusetts." Under the interpretation principles in Merrill Lynch, the Subcontract provision places venue in state and local courts in Boston or the federal court in Boston. Kallidus has requested a transfer to the federal court in Boston; therefore, River Front will still have the opportunity to litigate its Miller Act claims in federal district court if the case is transferred.

Furthermore, the Miller Act venue requirement was validly waived by the forum selection clause between Kallidus and River Front. While the Third Circuit has not specifically addressed this issue as it relates to the

Miller Act,[4] the Court accepts as persuasive the authority of other circuits which have held the Miller Act venue requirement subject to waiver. See FGS Constructors, 64 F.3d at 1233; U.S. ex rel. Pittsburgh Tank and Tower, 62 F.3d at 36. Therefore, the venue requirements in the Miller Act will not overcome the Subcontract forum selection clause.

## IV. **Conclusion**

For the reasons previously stated, Defendant's motion to transfer to the United States District Court for the District of Massachusetts is granted. An appropriate Order shall issue.

Dated: May 13, 2019

                                                        s/ Joseph H. Rodriguez
                                                        Hon. Joseph H. Rodriguez,
                                                        UNITED STATES DISTRICT JUDGE

---

[4] This issue has been litigated at the trial level in the Third Circuit. See Pride Enters. v. Lewes Steel Serv., No. 90-330, 2010 WL 1337683 at *5 (D. Del. March 31, 2010) (holding the Miller Act venue requirement was waivable by a valid forum selection clause).